**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

**River States Truck and Trailer, Inc.**
**3959 N. Kinney Coulee Road**
**La Crosse, Wisconsin 54601-1846**

**Case No. 3:20-cv-01089-jdp**

**Plaintiff,**

**v.**

**Daimler Vans USA LLC**
**One Mercedes Drive**
**Montvale, New Jersey 07645**

**and**

**Mercedes-Benz USA LLC**
**One Mercedes-Benz Drive**
**Sandy Springs, Georgia 30328-4321**

**Defendants.**

---

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiff has failed to provide competent proof that it suffered an injury in response to Defendants' factual challenge to the Court's subject matter jurisdiction ..... 2

B. The statutory termination procedures under either Wis. Stat. § 218.0116(1)(i) or Wis. Stat. § 218.0132(2) have not been triggered ..... 4

C. The Court should disregard River States' improper conflation of the single economic unit and line-make concepts ..... 7

D. This Court cannot hear River States' request for injunctive relief under the plain language of Wis. Stat. § 218.0163 ..... 13

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*520 Michigan Ave. Assocs., Ltd. v. Devine*,
433 F.3d 961 (7th Cir. 2006) ....................7

*ACLU of Illinois v. Alvarez*,
679 F.3d 583 (7th Cir. 2012) ....................6, 7

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009) ....................3

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)....................12

*Copperweld Corp. v. Indep. Tube Corp.*,
467 U.S. 752 (1984)....................8

*Des Moines Chrysler v. Dep't of Transp.*,
No. 08DOTMF005 (Iowa Dep't of Inspections and Appeals Feb. 16, 2009) ....................9

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826 (7th Cir. 2018) ....................6

*Eng'g Sales Co. v. Fall River Grp., Inc.*,
437 N.W.2d 235 (Wis. Ct. App. 1988) (per curiam) ....................5

*Forest Home Dodge, Inc. v. Karns*,
138 N.W.2d 214 (Wis. 1965)....................9, 10

*Forrest Lincoln Mercury, Inc. v. Ford Motor Co.*,
No. 1:11-cv-01136, 2012 WL 1642760 (M.D. Pa. May 10, 2012) ....................9

*Gen. Ins. Co. of Am. v. Wheaton-Winfield Dental Assoc. Ltd.*,
No. 1:05-cv-00332, 2005 WL 8179148 (N.D. Ill. Aug. 22, 2005)....................3

*Gen. Motors LLC v. KAR Auto Group of Decorah, Inc.*,
No. 6:20-cv-02039, 2020 WL 4937119 (N.D. Iowa Aug. 24, 2020)....................9

*Les Moise, Inc. v. Rossignol Ski Co., Inc.*,
361 N.W.2d 653 (Wis. 1985)....................5, 6

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016) ....................6

*Lindevig v. Dairy Equipment Co.*,
442 N.W.2d 504 (Wis. Ct. App. 1989) ........................................................................5, 6

*Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*,
250 F.3d 1077 (7th Cir. 2001) ..................................................................................2

*Nagle Motors, Inc. v. Volkswagen N. Cent. Distrib., Inc.*,
187 N.W.2d 374 (Wis. 1971)...........................................................................13, 14

*NLFC, Inc. v. Devcom Mid-America, Inc.*,
45 F.3d 231 (7th Cir. 1995) ......................................................................................4

*Ray Hutson Chevrolet, Inc. v. Gen. Motors Corp.*,
235 F.3d 348 (7th Cir. 2000) ..................................................................................13

*Schmitz v. Valentine & Kebartas, LLC*,
No. 2:18-cv-00015, 2019 WL 6619074 (E.D. Wis. Dec. 5, 2019) ..........................12

*Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.*,
23 F.3d 1134 (7th Cir. 1994) ....................................................................................1

*Smoky Mountain Freightliner, LLC v. DaimlerChrysler Vans, LLC*,
No. 2:05-cv-00173, 2006 WL 8442968 (E.D. Tenn. Mar. 7, 2006) ..........................8

*Subaru Distribs. Corp v. Subaru of Am., Inc.*,
No. 7:03-cv-09608, 2004 WL 3220120 (S.D.N.Y. June 1, 2004), *aff'd*, 425
F.3d 119 (2d Cir. 2005)...............................................................................................9

*United States v. Turkette*,
452 U.S. 576 (1981)..................................................................................................12

*Wis. Truck Ctr., Inc. v. Volvo White Truck Corp.*,
692 F. Supp. 1010 (W.D. Wis. 1988), *aff'd in part, rev'd in part*, 894 F.2d
1338 (Table) (7th Cir. 1990).....................................................................................14

**Statutes**

Wis. Stat. § 135.06........................................................................................................15

Wis. Stat. § 218.01(3)(f) (1963).....................................................................................10

Wis. Stat. § 218.01 (1969, 1987) ...................................................................................14

Wis. Stat. § 218.0114(7) ........................................................................................ *passim*

Wis. Stat. § 218.0116(1) ........................................................................................ *passim*

Wis. Stat. § 218.0132............................................................................................... *passim*

Wis. Stat. § 218.0133 ........................................ 6, 13

Wis. Stat. § 218.0163 ........................................ *passim*

## I. INTRODUCTION

The face of the Complaint and Defendants'[1] evidence challenging jurisdiction establish the correct result. River States cannot sue yet. *See Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1141 (7th Cir. 1994). The proper course is to follow the procedures for line-make discontinuations under Section 218.0132(2). Daimler Vans announced in August 2020 that it would discontinue the Freightliner Sprinter, with sales to be completed by December 31, 2021. This means a notice of termination is not due until June 30, 2021 (or later, under Section 218.0116(1)(i), which River States sues under). When Daimler Vans pays River States compensation for the line-make discontinuation, it will moot any injury River States might have suffered.

River States' opposition to the Motion (Dkt. 30, the "Response") does not overcome the plain language of this comprehensive regime Wisconsin has put in place. River States does not even address Defendants' factual challenge to jurisdiction. It instead doubles down that, because it has alleged a particular statute applies, there is no ripeness issue. River States also makes a red-herring argument about antitrust law that has no bearing on the issues in this case. These arguments are not sufficient to establish jurisdiction. River States needed to come forward with proof establishing that jurisdiction does in fact exist, despite Daimler Vans' intention to comply with Section 218.0132(2)'s safe harbor. That failure, combined with Chapter 218's plain requirements for when and how terminations are adjudicated, dooms the Complaint.

[1] Unless otherwise indicated, Defendants hereby incorporate by reference all defined terms from its Memorandum of Law in Support of Defendants' Motion to Dismiss. (Dkt. 21.)

## II. ARGUMENT

### A. Plaintiff has failed to provide competent proof that it suffered an injury in response to Defendants' factual challenge to the Court's subject matter jurisdiction.

River States addressed only Defendants' facial challenge to the Court's jurisdiction in its Response. (*See* Dkt. 30, at 5 ("Defendants have launched a facial attack on River States' allegations . . . .").) But Defendants also made a factual challenge to River States' assertion that it had suffered an injury. (*See* Dkt. 21, at 2 n.1, 14, 20–21; *see also id.* at 15 ("Both on the face of the Complaint and based on the additional facts that Defendants have relied on in bringing this Motion, the only correct conclusion is that River States has not suffered any injury, that it therefore lacks standing, and that its claims are not ripe for adjudication.").) Defendants' additional facts include evidence that Daimler Vans intends to comply with the safe-harbor provisions in Section 218.0132, such that River States will be compensated as required by Wisconsin law for discontinuing a line-make. (*See* Dkt. 22, at ¶ 13.) Defendants' factual challenge shifted the burden to River States (as the party seeking federal jurisdiction) to offer "competent proof" that such jurisdiction exists. *E.g.*, *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001).

River States ignored Defendants' factual challenge. And except for out-of-context quotations from Daimler Vans' August 2020 letters (*see* Dkt. 30, at 13 (quoting part of Dkt. 26-2)), it failed to address the documents that Defendants provided at all. Instead, River States only (and incorrectly, *see* Part II.C, *infra*) insisted that it has plausibly alleged a claim under Section 218.0116(1)(i). (*See generally* Dkt. 30, at 5–11.) However, River States cannot hide from the fact that, absent a failure to compensate under Section 218.0132(2), it has no viable damages theory. It incorrectly states in the Complaint that it has suffered an "actual pecuniary loss caused by the

cancellation of River States' Sprinter franchises." (Dkt. 13, at ¶ 27; *see also id.* at ¶¶ 1, 2, 37, 44.) But this bare conclusion, unsupported by plausible factual allegations, cannot sustain River States' claims. (*See generally id*.) And River States could not have pled something sufficient anyway, because nothing has been terminated, no injury has occurred, and the time for compensation has not arrived. (*See id.* at ¶ 27; *see also* Dkt. 21, at Part II.B.)

To try to remedy its omission, River States introduces a damages theory for the first time in its Response. It asserts that "Daimler Vans' actions have already caused [its] business to suffer financial loss," but then ambiguously states that "[t]he impending cancellation implicates time-consuming strategical decisions, raises customer relations concerns, and jeopardizes River States' goodwill." (Dkt. 30, at 17.)

This new assertion (offered without any support) does not ripen River States' premature claims. Under Defendants' factual challenge,[2] it falls far short of satisfying River States' burden to support the Court's jurisdiction with competent proof. River States makes no effort to explain how its vague references to "strategical decisions," "customer relations concerns," or "jeopardize[d] . . . good will" has "*already caused* . . . financial loss." (Dkt. 30, at 17 (emphasis added).) These alleged harms are speculative: they expressly depend on an "impending cancellation." Moreover, River States did not proffer any of the affidavits or exhibits that would be necessary to establish the Court's jurisdiction based on them. It has failed to offer competent proof of its damages sustained, and its Complaint should be dismissed on that basis alone.[3] *See*,

[2] As for Defendants' facial challenge to jurisdiction, the Court looks to the Complaint to determine whether River States has pled an injury, and the assertion (which never appears in the Complaint) is irrelevant to that inquiry. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

[3] Unless the Court grants the Motion, Defendants are entitled to jurisdictional discovery to evaluate River States' unsubstantiated damages theories before the case can proceed. *See Gen. Ins. Co. of Am. v. Wheaton-Winfield Dental Assoc. Ltd*., No. 1:05-cv-00332, 2005 WL 8179148, at *2 (N.D. Ill. Aug. 22, 2005) (noting that the court had permitted jurisdictional discovery on the amount in controversy, and dismissing the case for lack of subject matter jurisdiction due to the plaintiff's failure to provide competent proof of the amount in controversy).

*e.g.*, *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995) (affirming dismissal when the party asserting federal jurisdiction failed to "make some effort to prove that the damages sustained from its state law claims met the [jurisdictional] threshold," and instead chose "to defend its previous assertion as sufficient").

**B. The statutory termination procedures under either Wis. Stat. § 218.0116(1)(i) or Wis. Stat. § 218.0132(2) have not been triggered.**

Regardless of whether Section 218.0116(1)(i) or Section 218.0132(2) applies, Plaintiff also cannot avoid the reality that Daimler Vans has not yet provided any of the statutorily required notices of franchise terminations. For garden-variety terminations under Section 218.0116(1)(i), Wisconsin law requires twenty or sixty days' notice before the effective date of the termination, depending on the grounds, and further requires that the notice also "conspicuously display[]" a statement explaining the dealer's rights. Wis. Stat. § 218.0114(7)(a)(3)–(7)(c). For line-make discontinuations under Section 218.0132(2), Wisconsin's safe-harbor provision requires (among other things) that Daimler Vans give six months' notice of the "cancellation or nonrenewal" of the franchise. Daimler Vans has not provided either notice—and under either statute, Daimler Vans will still not be required to do so for several months.

River States' theory of ripeness depends upon Daimler Vans' two August 2020 letters sent to the dealerships (*see* Dkt. 22-2), which it insists demonstrate that injury is sufficiently imminent that it could bring its lawsuit more than a year before the Freightliner Sprinter would be discontinued. (*See* Dkt. 30, at 13.) This ignores that any damages River States might have are contingent on whether Daimler Vans fails to compensate it as required under Section 218.0132(2)'s safe harbor—not the future termination of the franchises. But even assuming that a termination creates a ripe claim, River States ignores that the letters are plainly ***not*** notices of

termination. The letters say nothing about termination, they contain no language suggesting that Daimler Vans intended for them to constitute notices of termination, and they contain none of the language that must be "conspicuously display[ed]" in order to qualify as notices of termination under Section 217.0114(7)(c). They thus do not trigger the termination procedures in the statute (such as the right to protest that notice in Section 217.0114(7)(d)). *See Eng'g Sales Co. v. Fall River Grp., Inc.*, 437 N.W.2d 235 (Table), at *2 (Wis. Ct. App. 1988) (per curiam) (the cessation of payments under an oral contract was not a notice of termination, when the evidence did not indicate that the payor informed the counterparty that it was terminating the contract, or that it otherwise intended its conduct to constitute such notice). And given the alleged discontinuation date of December 31, 2021, termination notice is not yet due.

These facts distinguish River States' claims from those in *Les Moise, Inc. v. Rossignol Ski Co., Inc.*, 361 N.W.2d 653 (Wis. 1985) and *Lindevig v. Dairy Equipment Co.*, 442 N.W.2d 504 (Wis. Ct. App. 1989). (*See* Dkt. 30, at 15–16.) The courts in those cases held that a notice of termination ***that did not comply*** with the Wisconsin Fair Dealership Law was an actionable violation. *Les Moise*, 361 N.W.2d at 658 ("Upon receipt of a written notice of termination which does not comply with the WFDL, the dealer has a cause of action . . . ."); *Lindevig*, 442 N.W.2d at 506 ("Plaintiffs had a right, upon receipt of [a] termination notice which violated the WFDL, to pursue WFDL remedies."). Those cases do not stand for River States' propositions that (i) notices of a line-make discontinuation (*i.e.*, Daimler Vans' August 2020 letters) should be treated as notices of termination under Chapter 218, or (ii) a notice of termination that ***does*** comply with Chapter 218's requirements triggers ripe damages claims. (*See* Dkt. 30, at 15 ("River States' claim for damages against Daimler Vans is ripe for adjudication because its statutory cause of action began to accrue on August 18, 2020 when it received Daimler Vans' letter informing that its

franchises will be cancelled.").) A Chapter 218-compliant notice of termination entitles a dealer, at most, to file a complaint with the Division for a determination of whether the termination is unfair (and by extension, injunctive relief), though such protests may only arise from garden-variety termination notices, not line-make withdrawal termination notices. *Compare* Wis. Stat. § 218.0114(7)(d) (protest right in response to notice of garden-variety termination) *with* Wis. Stat. § 218.0132 (not providing for a right to protest line-make withdrawal terminations). Any prospective damages claims are still unripe as of the notice date, however, in the context of a line-make withdrawal, because compensation under Section 218.0132(2) is not due for at least another nine months after the notice is given. Wis. Stat. §§ 218.0132(2)(a), 218.0133(3)(a). And until a manufacturer or distributor fails to provide that compensation, there is no violation entitling the dealer to damages. *See* Wis. Stat. §§ 218.0132(2) ("The cancellation or nonrenewal of a franchise shall not be a violation of s. 218.0116(1)(i) if all of the following requirements are met: . . . ."), 218.0163(1) ("[A] licensee may recover damages in a court of competent jurisdiction for pecuniary loss . . . if the pecuniary loss is caused by . . . (a) A violation . . . of [Section 218.0116(1)(i)]."). The Wisconsin Fair Dealership Law by contrast has none of these detailed line-make discontinuation procedures, meaning that *Les Moise* and *Lindevig* are irrelevant here.

River States' cited cases regarding the imminence of injury also do not support its position. (*See* Dkt. 30, at 13–14.) River States cites two data-breach cases from the Seventh Circuit, where the court held that the complaints alleged concrete and particularized future injuries when the at-issue data breaches had already occurred. *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967–68 (7th Cir. 2016); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018). In *ACLU of Illinois v. Alvarez,* the Seventh Circuit was narrowly addressing a pre-enforcement suit by the American Civil Liberties Union against the Illinois State's Attorney, where (i) there

was a credible threat of prosecution, and (ii) "[i]t is well established that in [such] suits injury need not be certain." 679 F.3d 583, 593–94 (7th Cir. 2012) (original brackets and internal quotation marks omitted). And in *520 Michigan Ave. Assocs., Ltd. v. Devine* (another pre-enforcement suit), the Seventh Circuit held that the lawsuit was ripe when the Illinois State's Attorney was threatening criminal prosecution but was not offering "a prompt opportunity to resolve the dispute in state court." 433 F.3d 961, 963 (7th Cir. 2006).

The case before this Court is nothing like the distinct fact patterns presented in River States' authorities. The underlying event giving rise to a lawsuit for wrongful termination has not occurred—no failure to compensate following a termination has occurred, and the termination itself has not occurred. And as Daimler Vans' proffered evidence shows (*see* Dkt. 22), Daimler Vans intends to compensate River States as required under Wisconsin law, such that resolution in court will not be required, even later. This Court should not allow River States to artificially jumpstart litigation and circumvent the state's detailed procedures for line-make discontinuations and the safe harbor provided to distributors like Daimler Vans.

**C. The Court should disregard River States' improper conflation of the single economic unit and line-make concepts.**

For the first time in its Response, River States argues in favor of finding jurisdiction that, because Mercedes and Daimler Vans would be treated as a "single economic unit" for the purposes of antitrust law, they cannot be treated as distinct distributors of separate line-makes for Mercedes-Benz-badged and Freightliner-badged commercial vans (at least for the purpose of determining whether to dismiss River States' Complaint). River States contends that it has "plausibly alleged that [Section 218.0116(1)(i) controls], [therefore it] has standing to bring its claim for damages . . . and that claim is ripe for adjudication." (*See* Dkt. 30, at 1–3, 5–11.) This argument is wrong, a red

herring, and conclusory.

River States is improperly conflating norms from the antitrust context with the definition of a line-make. The principle that a parent and subsidiary cannot together violate the Sherman Antitrust Act (*see Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771–772, 772 n.18 (1984)) has absolutely no bearing on whether Mercedes and Daimler Vans distribute the same line-make for the purpose of this state's motor vehicle franchise laws. Otherwise, distributors would be liable anytime they sought the safe harbor in Section 218.0132(2) if they (or one of their parents, subsidiaries, or sister companies) continued to distribute vehicles with a similar underlying design through a different brand pursuant to a separate set of agreements. (*See* Dkt. 21, at 5.) Under River States' view, all vehicles of a similar design that are distributed by corporate affiliates are part of the same line-make. That view would obliterate the fact that manufacturers and distributors often have multiple line-makes, and the fact that manufacturers and distributors are different concepts than line-makes.

Contrary to River States' position, courts and administrative agencies across the country agree that multiple line-makes may be sold by the same corporate group (or even the same company)—even if the line-makes' underlying vehicles are similar. Line-makes are defined by things like their distribution channels, trademarks, and badging.[4] *See, e.g.*, *Smoky Mountain Freightliner, LLC v. DaimlerChrysler Vans, LLC*, No. 2:05-cv-00173, 2006 WL 8442968, at *7–8 (E.D. Tenn. Mar. 7, 2006) (recommending dismissal of claims by a Freightliner Sprinter dealer against DaimlerChrysler Vans, LLC and Freightliner, LLC, arising from DaimlerChrysler, AG's decision to distribute a Dodge Sprinter and to discontinue the Freightliner Sprinter) ("DaimlerChrysler, AG . . . simply made the decision to begin selling the Sprinter vehicle under

[4] To be sure, line-makes may also be separated, in part, by virtue of being distributed by different entities, as they are here.

the Dodge brand and through Dodge dealers, which is tantamount to discontinuing the Sprinter line as far as Freightliner dealers are concerned . . . . [DaimlerChrysler Vans, LLC's] only connection to this matter is that it is owned by DaimlerChrysler, AG, and owns Freightliner, LLC."); *Subaru Distribs. Corp v. Subaru of Am., Inc.*, No. 7:03-cv-09608, 2004 WL 3220120, at *6 (S.D.N.Y. June 1, 2004) (holding that Subaru vehicles that were "re-badged" as Saab vehicles were not Subaru vehicles that the plaintiff had the contractual right to distribute) ("*Even if no physical modifications were made*, however, the name change would bring the vehicles outside the purview of the [contract].") (emphasis added), *aff'd*, 425 F.3d 119 (2d Cir. 2005); *Gen. Motors LLC v. KAR Auto Group of Decorah, Inc.*, No. 6:20-cv-02039, 2020 WL 4937119, at *1 (N.D. Iowa Aug. 24, 2020) (noting that the dealer "was authorized to sell and service two General Motors 'line-makes' of vehicles, namely Chevrolet and Cadillac" in a dispute arising from the dealer's addition of the "Chrysler, Dodge, Jeep and Ram [] line-makes, . . . manufactured by Fiat Chrysler"); *Forrest Lincoln Mercury, Inc. v. Ford Motor Co.*, No. 1:11-cv-01136, 2012 WL 1642760, at *3 (M.D. Pa. May 10, 2012) (noting the dealer and Ford's agreement that "Ford's discontinuance of its Mercury brand constitutes a line-make termination"); *Des Moines Chrysler v. Dep't of Transp.*, No. 08DOTMF005, at *12 (Iowa Dep't of Inspections and Appeals Feb. 16, 2009) (attached hereto as **Exhibit 1**) (ruling that Chrysler dealer had no standing to protest appointment of a Dodge/Jeep dealer) ("There are extensive similarities between the Chrysler Town and Country and the Dodge Grand Caravan. Nevertheless, there are differences between Chrysler and Dodge motor vehicles. Chrysler motor vehicles are marketed differently from Dodge motor vehicles.").

The Wisconsin Supreme Court's holding in *Forest Home Dodge, Inc. v. Karns*, 138 N.W.2d 214 (Wis. 1965) does not compel a different result. The court ruled that Chrysler's wholly

owned subsidiary could not apply for a dealer license, even though the statute forbidding manufacturers from applying did not expressly forbid their subsidiaries from doing so. *See id.* at 218 (discussing Wis. Stat. § 218.01(3)(f) (1963)). But this was because the legislature had written a statute that prevented manufacturers from operating dealerships that competed with their franchisees. *See id*. Given the clear legislative intent, "it would be naive to assume that its effect" did not extend to scenarios where "the manufacturer controls the license applicant." *Id.* Unlike the statute at issue in *Karns*, however, there is no comparable statute that demands that Section 218.0132 be interpreted to require that the Mercedes-Benz Sprinter and Freightliner Sprinter be treated as one line-make, just because Daimler Vans is Mercedes' subsidiary.[5]

Since the Response contends, for the first time, that Mercedes will continue to "enfranchise Sprinter dealers ***in Wisconsin*** after River States' Sprinter franchises have been cancelled," (Dkt. 30, at 11 n.5 (emphasis added)), it is worth noting that dealers in Wisconsin (including River States) and the U.S. government both recognize the distinction between the make of the Mercedes-Benz Sprinter and the make of the Freightliner Sprinter. This is verifiable through the National Highway Traffic Safety Administration's "VIN decoder" search engine. **Exhibit A** of the declaration filed contemporaneously with this Reply shows that the vehicle identification number for a Freightliner Sprinter for sale at River States is identified as having the "Freightliner" make. In fact, River States' own website identifies the Freightliner Sprinter in its inventory as being part

[5] River States suggests in the Response that "[i]t is questionable whether River States bears the burden at this stage of litigation to plead facts showing that § 218.0132 does not apply to the cancellation of its franchises." (Dkt. 30, at 3.) While manufacturers and distributors have the burden of proof to show that a termination was fair, for just provocation, and with due regard to the equities (*see* Wis. Stat. § 218.0114(7)(d)), there is no basis for shifting the burden to the manufacturer or distributor regarding the definition of a "line-make" for the purposes of Section 218.0132(2)'s safe harbor (least of all at the pleading stage in a federal action). Furthermore, Section 218.0163(1q) states that River States (as the "licensee seeking damages") has the burden to prove its damages. In any event, River States will have no damages at all if Daimler Vans compensates it pursuant to the safe harbor.

of the Freightliner "Make."[6] **Exhibit C** of that declaration shows that the vehicle identification number for a Mercedes-Benz Sprinter for sale at a Mercedes-Benz Commercial Vans dealership in Madison, Wisconsin is identified as having the "Mercedes-Benz" make.[7]

The record establishes that Mercedes-Benz Sprinters and Freightliner Sprinters are distributed through separate dealer networks under the Mercedes-Benz and Freightliner line-makes, respectively. Daimler Vans issued a separate set of dealer agreements with River States for its two dealerships. Those agreements (which the Response fails to meaningfully address) authorize River States to sell only those products that Daimler Vans has the right to distribute (*i.e.*, Freightliner Sprinter vans). (Dkt. 22-1, at Art. 2.1; *see also* Dkt. 22, at ¶ 6.) Daimler Vans is not authorized to distribute Mercedes-Benz Sprinters and has never authorized River States to sell them. (Dkt. 22, at ¶ 11.) And when the Freightliner Sprinter is discontinued, Mercedes is not going to be a "new" distributor within the meaning of Section 218.0116(1)(i)(2). As River States concedes, Mercedes has been separately distributing Mercedes-Benz Sprinters to a separate dealer network for ten years, and is not going to start distributing Freightliner Sprinters. (Dkt. 22, at ¶¶ 7–10, 14; *see also* Dkt. 30, at 18 ("MBUSA technically is not a 'new' distributor . . . .").) River States' antitrust/line-make argument is illogical and unsound, and it must be rejected by the Court.

While the background facts regarding the Mercedes-Benz and Freightliner line-makes are helpful context for understanding the Freightliner Sprinter discontinuation (*see* Dkt. 21, at 4 n.3), River States' insistence that the two brands should be treated as one line-make is ultimately not

---

[6] (*Compare* Michael D. Educate Decl., Ex. A *with* "2020 Freightliner ® SPRINTER 2500" (online at https://www.riverstates.com/default.asp?page=xNewInventoryDetail&id=9887857&p=1&make=freightliner&s=Year&d=D&sq=sprinter&fr=xNewInventory, visited Mar. 10, 2021), attached to the Michael D. Educate Decl. as **Exhibit B**.)

[7] (*Compare* Michael D. Educate Decl., Ex. C *with* "2020 Mercedes-Benz Sprinter 2500 High roof V6 170" Extended RWD" (online at https:// www.zimbrickmercedesbenz.com/new-Madison-2020-Mercedes+Benz-Sprinter-2500+High+Roof+V6+170+Extended+RWD-W1W4EDHY0LT034645, visited Mar. 8, 2021), attached to the Michael D. Educate Decl. as **Exhibit D**.)

dispositive of whether River States' claim are ripe. (*See, e.g.*, Dkt. 21 at Part IV.A.) Regardless of whether River States has correctly characterized the two commercial vans as one line-make (which it has not), the statutes do not provide causes of action over the decision to discontinue the Freightliner Sprinter. They provide causes of action for pecuniary loss arising out of statutory violations (*see* Wis. Stat. § 218.0163(1)), which have not happened here and which could not have even happened yet.[8]

River States' argument for jurisdiction is also based on bare assertions that do not satisfy the well-pled and plausibility requirements under *Twombly-Iqbal*. River States is essentially insisting that, because it alleged that Section 218.0116(1)(i) applies, its claims are ripe. But reciting the elements of a Section 218.0116(1)(i) violation is not sufficient to establish jurisdiction, given that there are no plausible claims of a termination (which has not occurred) or of damages (*see* Part. II.B, *supra*). *E.g.*, *Schmitz v. Valentine & Kebartas, LLC*, No. 2:18-cv-00015, 2019 WL 6619074, at *2, *5 (E.D. Wis. Dec. 5, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")) (upholding in part a facial challenge to jurisdiction, to the extent that the plaintiffs brought claims as purported representatives of an estate, when there were no allegations that plausibly claimed harm to the estate). The fact that Chapter 218 is remedial in nature (as River States discusses, *see* Dkt. 30, at 8–9) is not a panacea for that defect. Barring "a clearly expressed legislative intent to the contrary," the statute's language "must ordinarily be regarded as conclusive." *E.g.*, *United States v. Turkette*, 452 U.S. 576, 580 (1981) (internal

[8] Thus, in any event, the Court need not and should not reach a conclusion on what the relevant line-makes are, because the claims are premature no matter what. But even if the Court denies the Motion, the most that can be said about River States' allegations on this issue is to treat them as true for purposes of the Motion only and reserve the parties' dispute about the relevant line-makes for a later determination after the factual record has been developed and the issue is properly before the Court on the merits.

quotation marks omitted). Chapter 218 explicitly allows damages recovery for pecuniary losses when a manufacturer or distributor violates Section 218.0116(1)(i) (*i.e.*, when it "unfairly, without due regard to the equities or without just provocation, directly or indirectly cancel[s] or fail[s] to renew the franchise of any motor vehicle dealer")—not any time that a manufacturer or distributor announces a future business decision that the dealer does not like. Wis. Stat. § 218.0163(1). And in this case, pursuant to the statutory safe harbor, River States will have a remedy should Daimler Vans terminate its franchises without paying compensation within the time provided. *See* Wis. Stat. §§ 218.0132, 218.0133(3)(a). But at this time, its claims are unripe.

**D. This Court cannot hear River States' request for injunctive relief under the plain language of Wis. Stat. § 218.0163.**

River States also incorrectly invites the Court to entertain its tacked-on request for injunctive relief despite the legislature's clear intent that injunctive relief from a garden-variety termination must be sought from the Division. The legislature expressly created (i) a comprehensive scheme that calls for the dealer to file a complaint with the Division for "a determination of unfair discontinuation or cancellation under [Section] 218.0116(1)(i)," and (ii) an exception for damages claims arising from a Section 218.0116(1)(i) violation as one remedy for which dealers did not need to "exhaust[] any administrative remedy available." *See* Wis. Stat. §§ 218.0114(7)(d), 218.0163(1). *Ray Hutson Chevrolet, Inc. v. Gen. Motors Corp.*, 235 F.3d 348 (7th Cir. 2000)[9] instructs in favor of that statutory construction, and the older cases that River States cites are inapposite. (*See* Dkt. 30 at 20–21 (citing *Nagle Motors, Inc. v. Volkswagen N. Cent.*

[9] River States notably does not disagree with Defendants' reading of the *Ray Huston* decision. It hopes the Court will ignore it because it was dealing with "an entirely different statute." (*See* Dkt. 30, at 21.) Yet *Ray Hutson* was cited for the broader proposition that administrative remedies must be exhausted where the legislature has, as here, created a comprehensive administrative scheme for determining certain issues, and has elected not to carve out a remedy (here, enjoining a termination; there, approval of adding a line to a dealership) from the requirement that administrative remedies must first be exhausted.

*Distrib., Inc.*, 187 N.W.2d 374 (Wis. 1971); *Wis. Truck Ctr., Inc. v. Volvo White Truck Corp.*, 692 F. Supp. 1010 (W.D. Wis. 1988), *aff'd in part, rev'd in part*, 894 F.2d 1338 (Table) (7th Cir. 1990)).)

*Nagle Motors* and *Wis. Truck Center* have no bearing on the issue. Not only did neither opinion address the question of administrative exhaustion that is before the Court here, they were dealing with older versions of Chapter 218 that did not mention administrative exhaustion in its "civil damages" provision (then found in Section 218.01(9)). At the time those cases were filed, the civil damages provision did *not* contain the "[w]ithout exhausting any administrative remedy available" language that exists today. *Compare* Wis. Stat. §§ 218.01(9) (1969) (attached hereto as **Exhibit 2**) ("Any licensee suffering pecuniary loss because of a violation by any other licensee of [Section 218.01(3)(a)(17)] . . . may recover damages therefor in any court of competent jurisdiction in an amount equal to 3 times the pecuniary loss together with costs including a reasonable attorney's fee.") *and* Wis. Stat. §§ 218.01(9) (1987) (attached hereto as **Exhibit 3**) (same) *with* Wis. Stat. § 218.0163(1) ("*Without exhausting any administrative remedy* available under . . . ss. 218.0101 to 218.0163, . . . a licensee may recover damages in a court of competent jurisdiction for pecuniary loss, together with actual costs including reasonable attorney fees, if the pecuniary loss is caused by . . . (a) A violation . . . of [Section 218.0116(1)(i)].").

The later addition of the "without exhausting any administrative remedy" language to Section 218.0163 demonstrates that the Wisconsin legislature intended to require exhaustion of administrative remedies for other forms of relief arising from Section 218.0116(1)(i) terminations. The legislature is competent to establish the scope of and forum for various requests for relief. River States may not ask this Court to second-guess or ignore those choices. And we know that the legislature's choice was purposeful by comparing Section 218.0163 to the Wisconsin Fair

Dealership Law in Chapter 135, which separately provides that "[i]f any grantor violates this chapter, a dealer may bring an action against such grantor in any court of competent jurisdiction for damages sustained . . . and the dealer ***also may be granted injunctive relief***." Wis. Stat. § 135.06 (emphasis added). This Court should therefore read Section 218.0163(1) to mean exactly what it says and dismiss River States' request for injunctive relief, which the Division has exclusive jurisdiction to hear first.

## III. CONCLUSION

For the foregoing reasons and those provided in the Memorandum of Law in Support of Defendants' Motion to Dismiss, Defendants respectfully request that the Court grant the Motion, and that the Court order any other and further relief that would be just and proper.

March 15, 2021

Respectfully submitted,

*/s/ Jack O. Snyder, Jr.*

Jack O. Snyder, Jr.
Michael D. Educate
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 W. Madison St., Ste. 3900
Chicago, IL 60606
Tel. (312) 984-3100
Fax (312) 984-3150
jack.snyder@bfkn.com
michael.educate@bfkn.com

*Attorneys for Defendants*